UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-5035 |
| | § | |
| $15,049.12 USDT SEIZED FROM | § | |
| BINANCE WALLET 0x3267, | § | |
| Defendant. | § | |

VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS

The United States of America, Plaintiff, files this action for forfeiture in rem against $15,049.12 in seized Tether cryptocurrency (the "Defendant Property") that was obtained from a victim by fraud. The United States alleges on information and belief as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a) and (b).

THE DEFENDANT PROPERTY

3. Tether (hereinafter referred to by its currency code "USDT") is a cryptocurrency stablecoin, tied to the U.S. dollar. The Defendant Property is $15,049.12 in USDT seized from a Binance wallet with an address beginning with

0x3267 and associated with a User ID ending in 6215, held in the name of Phyu Phyu Htwe, an individual who presented a Myanmar passport when opening the Binance account.

## STATUTORY BASIS FOR FORFEITURE

4.   This is a civil action in rem brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense."  Title 18 U.S.C. § 1343 (wire fraud) is "specified unlawful activity" ("SUA") pursuant to 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. § 1961(1)(D).

5.   This action is also brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 [of Title 18], or any property traceable to such property."  Section 1956(a)(1) makes it a crime to knowingly conduct or attempt to conduct a financial transaction with SUA proceeds with specific intent to:   promote the SUA; conceal or disguise the source, origin, nature, ownership, or control of the SUA proceeds; evade reporting requirements; or evade taxes.

6.      The Defendant Property is subject to forfeiture both (a) under 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable wire fraud; and (b) under 18 U.S.C. § 981(a)(1)(A) as property involved in, or traceable to, money laundering in violation of 18 U.S.C. § 1956(a)(1).

## FACTS

7.      The U.S. Secret Service received a report that an individual with initials "RO" was a victim of cryptocurrency fraud, including losing $293,000 through a Coinbase account.   Victim RO is a resident of Harris County, Texas, within the Southern District of Texas.   The fraud appears to be an investment fraud known as a pig butchering scheme in which the perpetrator gradually gains the fraud victim's trust and obtains money from the victim through fraud and deceit. The initial transactions are often in small amounts and are designed to gain the victim's trust. Subsequent transactions are in larger amounts and cause significant financial loss to the victim.

### A.   Unauthorized Transfers from the Victim's Coinbase Account

8.      The victim stated that around June 2024, he was contacted via text message by a female who said her name was Angie Lee ("Lee"). The messaging eventually moved from text message to WhatsApp. The victim stated that the conversation started out with just small talk, but Lee later stated told the victim she could grow his money if he invested in cryptocurrency.

9. The victim stated that he sent Lee small amounts of funds via CashApp before he began engaging in cryptocurrency transactions. The victim stated that Lee directed him to establish various accounts, including at Coinbase, so he could begin investing in cryptocurrency. In addition to funds sent to other cryptocurrency exchanges, the victim stated he withdrew $300,849.78 from his 401(k) account and into his credit union account. The victim then authorized three wire transfers totaling $293,000 from his credit union account into his Coinbase account in late 2024. After the victim deposited $293,000 U.S. dollars into his Coinbase account, he purchased USDT.

10. The victim provided the Secret Service with documentation from his bank, which confirms that there were three wire transfers to Coinbase in November and December 2024 in the amounts of $90,000, $93,000, and $110,000. The victim stated that when he realized he couldn't withdraw his money from Coinbase and another account, he submitted complaints to the Federal Trade Commission and to the Internet Crime Complaint Center. The victim provided photos of transactions IDs, account addresses, and a copy of Angie Lee's purported driver's license from California.

11. After the victim's wire transfers into his Coinbase account, there were multiple unauthorized transfers of USDT from that account to wallets the victim did not control. The funds that were traced into and seized from the Binance wallet

came from a portion of the $293,000 originally deposited to the victim's Coinbase account.

B.  **Overview of Activity in Binance Wallet 0x3267**

12.  Ultimately, the Secret Service was able to trace a small portion of the USDT from the victim's Coinbase account into a Binance wallet with an address beginning with 0x3267 and associated with a User ID ending in 6215 ("Binance Wallet 0x3267"). The User ID is held in a name of an individual with initials PPH (as translated from Burmese using an open-source translator), and that person provided Binance with an email address of nanphyuphyuzin@icloud.com and a passport from the Republic of the Union of Myanmar.

13.  A review of the Binance Wallet 0x3267 account transactional history shows that at the time of the review, Binance Wallet 0x3267 had a lifetime receipt of approximately $2.58 million worth of cryptocurrency, with the majority being USDT sent from multiple private wallets. The records reflect that the Binance account has had approximately $5.2 million in total U.S. dollars transferred through the account since it was opened. This account was registered on May 22, 2023. That pattern of activity is consistent with an account used to receive and launder fraud proceeds.

14.  In addition, a review of transactional records obtained from Binance shows that the Binance Wallet account activity included regular trades and internal

5

purchase orders for alternate forms of cryptocurrency including Dogecoin, DAI, Shiba Inu, Tron, and TRUMP. The Account received 44 deposits of primarily USDT and had 58 trade and internal purchase orders for alternative cryptocurrencies. The cryptocurrencies were then moved out of Binance Wallet 0x3267 in 40 transactions totaling approximately $2.58 million. This activity occurred from approximately September 22, 2024, to February 02, 2025, with incoming deposits often rapidly swapped to a different cryptocurrency and then exiting the Binance Wallet account as a withdrawal.

15. Analysis of the Binance account access logs and device IDs shows the account being accessed from multiple countries including Myanmar, Thailand, Singapore, Hong Kong, Indonesia, and Brazil. The login time stamps multiple instances are in a very short period of time across a vast geographic distance that would not allow for sufficient time to travel between the locations. The account is also accessed by two distinct iPhone devices, each geolocating to a different country with an overlap in the time periods they are used to access the account. These factors indicate the account is not controlled by just one individual but is likely being utilized by a network of individuals in furtherance of fraudulent activities.

C.  **Tracing of the Victim's Cryptocurrency**

16. A Secret Service Investigative Analyst used a commercial tracing tool to trace the victim's funds.

17. As part of this investigation, I obtained information from Binance on the target wallet address beginning with 0x3267. An analysis was conducted to trace the victim's investment in cryptocurrency, with the first unauthorized transfer from Coinbase occurring on December 11, 2024. Below is a diagram showing the transfer of the victim's USDT from his Coinbase until the crypto landed in the wallet at Binance. Only a small portion of the total victim property (approximately $15,000) was ultimately found in the target wallet.



The diagram above shows the victim's original wallet on the left and the target wallet on the right, and is more clearly visible in Attachment A. The flow of funds in the diagram reflects the transfers that are described below. The amounts have been rounded to whole numbers, and unique addresses have been shortened (for example to "Wallet A") for ease of reading:

    On December 11, 2024, at 8:12 pm, transfer of 92,993 USDC from Victim Account to Wallet A.

On December 11, 2024, at 8:23 pm, transfer of 92,992 USDC from Wallet A to Wallet B.

On December 12, 2024, at 6:12 am, transfer of 92,992 USDC from Wallet B to Unhosted Wallet.

On December 12, 2024, at 6:28 am, transfer of 396,163 USDC from Unhosted Wallet to a decentralized exchange called Tokenlon, which immediately sent back 395,954 DAI to Unhosted Wallet.

On December 12, 2024, at 6:31 am, transfer of 395,954 DAI from Unhosted Wallet to Wallet C.

On January 03, 2025, at 8:08 pm, transfer of 400,000 DAI from Wallet C to Second Unhosted Wallet.

On February 02, 2025, at 10:30 am, transfer of 320,000 DAI from Second Unhosted Wallet to Wallet D.

On February 02, 2025 at 7:28 pm, transfer of 150,000 DAI from Wallet D to Target Binance Wallet 0x3267.

18. Specifically, the victim funds that were traced came from a December 11, 2024, transfer of approximately 92,993 USDC from the victim's Coinbase account to the first non-victim wallet. Between December 11, 2024, and February 02, 2025, there were multiple transfers of the victim's 92,993 USDC involving four other wallets and one unhosted wallet. The multiple transfers included the victim's

USDC (and some other USDC from unknown sources) being converted into DAI, another cryptocurrency stablecoin. The DAI funds were moved on or about February 2, 2025, to Binance Wallet 0x3267. On February 2, 2025, the DAI in the target Binance wallet was converted to USDT. Some USDT was then converted to Dogecoin, and that same day of February 2, 2025, approximately $466,000 worth of Dogecoin was withdrawn.

19. Binance Wallet 0x3267 received the suspect 150,000 of the victim's stablecoin DAI on 2/2/25 at 19:29 UTC ("coordinated universal time"). At 19:42 UTC, the account started making multiple over-the counter (OTC) trades of DAI for USDT, which was completed at 19:50 UTC. At 19:51 UTC, the account then made internal trade orders, or swaps, of USDT to Dogecoin until 20:06 UTC. Finally, at 19:59 UTC and 20:19 UTC, the account made withdrawals of approximately $466,000 worth of Dogecoin. This type of activity involving immediate token swapping and rapid withdrawals of funds following deposits and conversion is often used by actors to attempt to obfuscate the source and nature of funds and is indicative of money laundering.

20. Ultimately, by the time of seizure, approximately only $15,000 of the victim's USDT remained in the Binance Wallet.

NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the property

subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  The verified claim must be filed no later than 35 days from the date this Complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official government forfeiture internet site, in accordance with Rule G(5)(a)(ii)(B).

An answer or a motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than 21 days after filing the verified claim.  The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy must be sent to the undersigned Assistant United States Attorney at the address provided in this Complaint.

## RELIEF REQUESTED

The United States will serve notice, along with a copy of the Complaint, on persons who reasonably appear to be potential claimants.

The United States seeks a final judgment forfeiting the Defendant Property to the United States and requests any other relief to which the United States may be entitled.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

*/s/ Zachary Blackmon*
ZACHARY BLACKMON
Assistant United States Attorney
U.S. Attorney's Office
Southern District of Texas
600 E. Harrison Street, #201
Brownsville, Texas 78520

## VERIFICATION

  I, Connor Korban, Special Agent with the U.S. Secret Service, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraph 3 and paragraphs 7 through 20 of the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation. Those facts are true and correct to the best of my knowledge and belief.

Connor Korban, Special Agent
United States Secret Service